## UNITED STATES DISTRICT COURT
### DISTRICT OF PUERTO RICO

**MANUEL SANCHEZ RAMOS,**
Plaintiff,

                                                    **CIVIL NO. 03-2043 (DRD)**

v.

**PUERTO RICO POLICE
DEPARTMENT, et al.,**
Defendants.

### OPINION & ORDER

The above captioned case is a discrimination claim filed pursuant to the provisions of Title

VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. §§ 1983, and

1988; the Fifth and Fourteenth Amendments of the Constitution of the United States; Puerto Rico

Law 115 of December 20, 1991, as amended, and other State Supplemental claims under 29 P.R.

Laws Ann. § 194; and Articles 1802 and 1803 of the Puerto Civil Code, 31 P.R. Laws Ann. §§ 5141,

and 5142.  In sum, Plaintiff is seeking several equitable, compensatory, and punitive remedies, to

wit:  1) declare that the acts and practices of the Police Department of Puerto Rico to be in violation

of Title VII of the Civil Rights Act of 1964, and of 42 U.S.C. §§ 1983, and 1988; 2) declare that the

acts and practices complained of are in violation of Puerto Rico Law100 of June 30, 1959, as

amended, 29 P.R. Laws Ann. § 146; Puerto Rico Law 115, supra; and Articles 1802, and 1803 of

the Puerto Rico Civil Code, supra.; 3) declare that Defendants' acts and practices deprived Plaintiff

of his federal rights as guaranteed by the Constitution of the United States and the Commonwealth

of Puerto Rico; 4) punitive damages in the amount of at least $300,000.00 as provided by Title VII,

supra; 5) appropriate reimbursement for medical expenses and special damages; 6) costs including

reasonable attorney's fees as provided by Section 706 of Title VII, 29 P.R. Laws Ann. § 155k, and

42 U.S.C. § 1988; 7) direct co-Defendant to pay Plaintiff compensatory damages for mental anguish

pain, suffering, and humiliation in the sum of at least $1,500,000.00, and a sum equal to double the damages suffered by Plaintiff for violation of 29 P.R. Laws Ann. § 194, in an amount not less than $3,000,000.00; 8) direct co-Defendant Rodriguez to pay Plaintiff compensatory and punitive damages for his mental anguish, pain, suffering, and humiliation in the sum of at least $1,500,000.00; 9) direct Defendants to pay Plaintiff damages for loss of enjoyment of life in the sum of at least $1,000,000.00 in addition to the compensatory damages claimed above; 10) prejudgment interests; and 11) any other additional relief that the Court may deem appropriate and just.

The relevant procedural history of the case is as follows: on September 19, 2000, Plaintiff filed a discrimination charge against the Police Department of Puerto Rico before the Anti-Discrimination Unit of the Department of Labor of the Commonwealth of Puerto Rico pursuant to Section 503 of the Rehabilitation Act of 1973. Said complaint was later referred to the United States Equal Opportunity Commission (EEOC), New York District Office. The EEOC, New York Office, then referred the case to the San Juan District Office. Subsequently, on April 18, 2003, Plaintiff requested from the EEOC a "right to sue" letter. Thus, the matter was referred to the United States Department of Justice, Civil Rights Division. On June 26, 2003, the United States Department of Justice, Civil Rights Division issued the requested "right to sue" letter, postmarked on that same date. Finally, on September 25, 2003, Plaintiff filed the instant claim before this Court.

Pending before the Court is defendants, Puerto Rico Police Department and Victor Rodriguez-Velez's *Motion to Dismiss* pursuant to Fed.R.Civ.P. 12(b)(6). (Docket No. 15). Defendants aver that dismissal is appropriate because the cause of action under Title VII, 42 U.S.C. § 1983 is time barred, the due process claims lack merit, and, thus, supplemental jurisdiction should not be asserted. Plaintiff, then requested an extension of time to file their opposition to Defendants'

request, and the Court, even though the request was untimely pursuant to Local Rule 7.1(b), granted Plaintiff's request and provided him until Friday, July 30, 2004 to file his opposition. (Docket No. 18). However, Plaintiff disregarded the Court's gratuitous gesture and proceeded to file his opposition in an untimely fashion on Saturday, July 31, 2004. (Docket No. 19). Accordingly, the Court will now consider Defendants' <u>unopposed</u> request for dismissal.[1]

## I. MOTION TO DISMISS UNDER RULE 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may, in response to an initial pleading, file a motion to dismiss the complaint for failure to state a claim upon which relief may be granted. It is well-settled, however, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also* <u>Ronald C. Brown v. Hot, Sexy, and Safer Productions, Inc.</u>, 68 F.3d 525 (1st Cir. 1995); <u>Miranda v. Ponce Fed. Bank</u>, 948 F.2d 41, 44 (1st Cir.1991). The Court must accept as true all well pleaded factual averments contained in the complaint, while, at the same time, drawing all reasonable inferences from the allegation in favor of the Plaintiff. *See* <u>McDonald</u>

---

[1] "In an era of burgeoning case loads and thronged dockets, effective case management has become an essential tool for handling civil litigation." <u>O'Connell v. Hyatt Hotels of Puerto Rico</u>, 357 F.3d 152 (1st Cir. 2004). It is Rule 16 which provides the Court with devices, like a scheduling order, necessary to manage its docket. *See* Fed.R.Civ.P. 16. Moreover, in order for Rule 16(b) to be effective, the Courts cannot allow litigants to treat scheduling orders "as a frivolous piece of paper idly entered, which can be cavalierly disregarded without peril" as has been abused in the instant case. *See* <u>O'Connell</u>, 357 F.3d at 155. "[T]he effective administration of justice requires that trial courts possess the capability to manage their own affairs". <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), *quoting* <u>Chamorro v. Puerto Rican Cars, Inc.</u>, 304 F.3d 1, 4 (1st Cir. 2002). Furthermore, counsel do not run the Court. Thus, parties have an "**unflagging duty to comply with clearly communicated case-management orders**". <u>Diaz v. Gonzalez</u>, 140 F.3d 312, 315 (1st Cir.1998) (*emphasis added*). It is self-evident that "courts cannot function if litigants may, with impunity, disobey lawful orders." <u>Chamorro v. Puerto Rican Cars, Inc.</u>, 304 F.3d at 5, <u>HMG Prop. Investors, Inc. v. Parque Indus. Rio Canas, Inc.</u>, 847 F.2d 908, 916 (1st Cir. 1988). The Court finds that plaintiffs have failed to be **reasonably** diligent. The Court does not have the "obligation to play nursemaid to indifferent parties." <u>Pinto v. Universidad de Puerto Rico</u>, 895 F.2d 18, 19 (1st Cir. 1990).

v. Santa Fe Trail Transp. Co., 427 U.S. 273, 276, 96 S.Ct. 2574, 2577 (1976); Berríos v. Bristol Myers Squibb Caribbean Corp., 51 F.Supp.2d 61 (D.P.R. 1999); Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996);Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994); Correa Martinez v. Arrillaga Belendez, 903 F.2d 49, 51 (1st Cir. 1990); Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).  However, "because only well pleaded facts are taken as true, we will not accept a complainant's unsupported conclusions or interpretations of law."  Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971 (1st Cir. 1993).

When opposing a Rule 12(b)(6) motion to dismiss, "a Plaintiff cannot expect a trial court to do his homework for him."  McCoy v. Massachusetts Institute of Technology, 950 F.2d 13, 22 (1st Cir. 1991).  Rather, the Plaintiff has an affirmative responsibility to put his best foot forward in an effort to present a legal theory that will support his claim.  Id. at 23, *citing* Correa Martinez, 903 F.2d at 52.  Thus, Plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory."  Romero-Barceló v. Hernández-Agosto, 75 F.3d 23, 28 n. 2 (1st Cir.1996) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir.1988)).  In sum a claim shall be dismissed under Rule 12(b)(6) **only if it appears beyond doubt that the pleader can prove no set of facts in support of the claim that would entitle the pleader to relief**. Conley v. Gibson, 355 U.S. at 78.

Notwithstanding, the Court is not obligated to accept Plaintiff's "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aulson, 83 F.3d at 3.  The Court must only accept those facts that are "well pleaded," limiting its inquiry into the allegations of the complaint. Litton Indus., Inc. v. Colon, 587 F.2d 70, 74 (1st Cir. 1978).  In sum, the Court's focus should always be on "whether a liberal reading of [the complaint] can reasonably admit of a

claim[.]" Id.; *see also* Rogan v. Menino, 175 F.3d 75 (1st Cir. 1998).

A district court's dismissal of a claim under Rule 12(b)(6) is reviewed *de novo* by the appeals court; as such court, the Court of Appeals "accept[s] as true all well-pleaded factual averments and indulg[es] all reasonable inferences in the Plaintiff's favor." Calderon Ortiz v. Laboy Alvarado, 300 F.3d 60, 62-63 (1st Cir. 2002); SEC v.SG Ltd., 265 F.3d 42, 46 (1st Cir. 2001). Accordingly, "if the facts contained in the complaint, viewed in this favorable light, justify recovery under any applicable legal theory", any order of dismissal shall be set aside. Calderon Ortiz, 300 F.3d at 63; quoting, Conley v. Gibson, 355 U.S. at 45-46; Aulson, 83 F.3d at 3.

Finally, "it is well established that affirmative defenses [such as time prescription] may be raised in a motion to dismiss an action for failure to state a claim". Blackstone Realty LLC v. FDIC, 244 F.3d 193, 197 (1st Cir. 2001); LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998)("In the case of the affirmative defense of statute of limitations, dismissal is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time barred".); Aldahonda-Rivera v. Parke Davis and Company, 882 F.2d 590, 592 (1st Cir. 1989)("When a Defendant raises an affirmative defense that is obvious on the face of Plaintiff's pleadings, and the court makes the ruling based only on those pleadings, the motion is treated as a Rule 12(b)(6) motion to dismiss). In cases in which the affirmative defense is based on the statute of limitations, the Court may grant a motion to dismiss if the pleader's allegations leave no doubt that the asserted claim is time-barred. *See*, Street v. Vose, 936 F.2d 38, 39 (1st Cir. 1991); Kali Seafood Inc. v. Howe Corp., 887 F.2d 7, 9 (1st Cir. 1989). *See also* Estate of Alicano-Ayala v. Philip Morris, Inc., 263 F.Supp.2d 311, 315 (D.P.R. 2003).

## II.  DISCUSSION

In the motion to dismiss, Defendants allege that this Court lacks jurisdiction over the 42 U.S.C. § 2000e claims because the ninety-day (90) limitation period for bringing a Title VII action after receipt of the right to sue letter in the federal forum was not complied by Plaintiff.  Thus, according to Defendants, the instant claim is time barred.  Moreover, Defendants allege that all other claims are also time barred for it is well settled law that state law statutes of limitations apply to suits in federal courts arising under § 1983, and that the Federal District Court of Puerto Rico borrows the one year state law statute of limitation afforded for personal injury claims.  Defendants further argue that Plaintiff's allegations relate to events that go back to July 14, 2000, more than a year before the filing of the complaint, and, therefore, the case is time barred by the statute.  Defendants also contend that the Fifth and Fourteenth Amendment due process claims lack merit.  They purport Plaintiff failed to make any reference whatsoever to which due process was being violated and how. Furthermore, the vague allegations alone cannot be sustained.  Finally, Defendants request the Court to dismiss all supplemental jurisdiction claims given that Plaintiff failed to allege any cause of action under federal law.

A.  Title VII

1)  Statute of Limitation

Pursuant to 42 U.S.C. §2000e-5(f)(1), a civil action must be commenced within ninety (90) days after the movant party receives the "right-to-sue" letter issued by the United States Equal Employment Opportunity Commission (EEOC).  That is to say, after a charge has been filed with the EEOC, there are two instances where a "right-to-sue" letter may be issued:  first, during the administrative investigation, when the claimant requests in writing that a notice of "right-to-sue" be issued; and, second, after the EEOC's disposition of a charge.  Moreover, it is only upon issuance

of the "right-to-sue" notice that the claimant will be deemed to have exhausted all administrative remedies in order to be able to file an action in civil court.  Finally, as stated above, once the claimant has received the notice, he or she only disposes of ninety (90) days to file said action. 42 USC §2000e-5(f)(1).  *See also*, <u>Perez Cordero v. Wal-Mart PR, Inc.</u>, 235 F.3d 95, 101 (D.P.R. 2002).

Defendants assert that Sanchez's cause of action under 42 U.S.C. §2000e is time barred by the ninety-day (90) limitation period to bring suit under Title VII. (Docket No.15 at 3).  As defendant correctly points out, 42 U.S.C. §2000e-5(f)(1) establishes that, once the EEOC makes the determination to dismiss an employee's Title VII charges, the EEOC  "shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought" in District Court by the aggrieved employee.  According to Plaintiff's own allegations, the EEOC issued and postmarked the "right-to-sue" letter on June 26, 2003. (Docket No.1 ¶ 3, and Docket No.4 ¶4).  The Court notes that the complaint initiating the present action was received and stamped by the Clerk's Office of this Court on September 25, 2003 – ninety one (91)  days after the EEOC allegedly issued the "right-to-sue" letter. (Docket No.1 at 1).  Consequently, Plaintiff's Title VII claims appear to be one day late, and, thus, time barred.  However, FED.R.CIV P. 6(e) provides that: "[w]henever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon him and the notice or paper is served upon him by mail, three (3) days shall be added to the prescribed period."  Given that Plaintiff stated that the EEOC postmarked the "right-to-sue" letter on June 26, 2003, this Court can only infer that the EEOC sent its notice through the mail. (Docket No.4 ¶ 4).  Therefore, this Court needs to, first, determine if Rule 6 is applicable to a Title VII Plaintiff wishing to file suit in a

District Court when there is an allegation regarding the specific date of when the EEOC sent it, but no allegation as to the date of Plaintiff having received said notice.

Neither the First Circuit Court of Appeals nor any of its member districts have had an opportunity to address this issue directly.  Nevertheless, three different Circuit Courts have considered the issue of whether Rule 6 provides a three day extension when a Title VII Plaintiff receives the "right-to-sue" letter by mail, thus, automatically increasing the limitation period established by 42 U.S.C. §2000e-5(f)(1) from ninety (90) to ninety three (93) days. *See* Petee v. American Standard Graphic, 855 F.2d 331, 331-32 (6th Cir. 1989); Mosel v. Hill Dpt. Store,Inc., 789 F.2d 251 (3rd Cir. 1986); Noris v. Florida Department of Health and Rehabilititative Services, 730 F.2d 638  (11th Cir. 1984).  All, the Third, Sixth, and Eleventh Circuits, upon certain proof of the date in which the claimant **received** the right to sue letter, have declined to grant such an extension. They emphasize that "the reason for the three days is to account for the time required for delivery of the mail" and given that "the 90-day time period commences, [...,] **upon receipt**, and not upon the mailing of the "right-to-sue" notice[. ...] there is no reason to apply Rule 6(e)." Noris, 730 F.2d at 683 (emphasis ours).  **Curiously, the non-applicability of Rule 6(e) to Title VII Plaintiffs has been limited to those instances where the date in which the movant party received the "right-to-sue" letter is known, contrary to the instant case were the date of issue by the EEOC is known but not the date of receipt.**  Particularly, the Supreme Court made pellucidly clear that there is no justification for the view "that the Federal Rules of Civil Procedure were to have different meaning in, or were not to apply to, Title VII litigation." Baldwing County Welcome Center v. Brown, 466 U.S. 147, 104 S.Ct. 1723,1725, 80 L.Ed.2d 196 (1984).

Based on Baldwing County Welcome Center, 466 U.S. 147, the Third Circuit Court of

Appeals stated (albeit in *dictum*) that:

> the Supreme Court has suggested that Rule 6(e) is applicable in the present context [when a Title VII plaintiff receives the right to sue letter by mail] if the parties **dispute the date on which the Plaintiff received notice** of the EEOC's determination. **In that situation, Rule 6(e) would create a presumption that the notice was received three days after it was mailed.**

Mosel, 789 F.2d at 253 (*emphasis ours*). Given the strong language of the Supreme Court in Baldwing County Welcome Center, 466 U.S. 147, and the fact that the rational for the application of Rule 6, as the Eleventh Circuit explains, is precisely "to account for the time required for **delivery** of the mail," Noris, 730 F.2d at 683 (*emphasis ours*), this Court agrees with the rational expressed by the Third Circuit in Mosel, 789 F.2d at 253, and adopts said reasoning to the case herein being litigated.

In the case at bar, even though the EEOC issued the "right-to-sue" letter on June 26, 2003, it is Plaintiff's contention that he received such notice "a few days latter." (Docket No.1 at ¶ 3). As explained above, in cases in which the date of receipt is either disputed or cannot be established, Rule 6 creates a presumption that the communication was received by Plaintiff three days **after** it was issued by the EEOC. Consequently, from Plaintiff's allegations, the Court must determine that Sanchez received the "right-to-sue" letter on June 29, 2003, three days after it was sent and postmarked by the EEOC. Therefore, Plaintiff had until September 27th of 2003 to file the instant suit. Having Plaintiff filed his claim on September 25th, the Court has but one alternative and that is to declare that the instant cause of action under 42 U.S.C. §2000e has been timely filed.

2) Physical Disability & Title VII

Plaintiff further alleges that the acts of discrimination perpetrated against him were

motivated by his physical disability[2]. (Docket No.1 at ¶ 12).  Plaintiff thus seeks relief for the discriminatory actions allegedly suffered under to Title VII, 42 U.S.C §2000e.  Title 42 of the United States Code provides that it is an unlawful employment practice to discriminate on the basis of "race, color, religion, sex or national origin." 42 U.S.C. §2000e-2.  Title VII is unquestionably silent regarding discrimination motivated by a person's physical or mental impediment.  Such claims are contemplated, in turn, by the American with Disabilities Act of 1990, 42 U.S.C. §12132, and not by 42 U.S.C §2000e.  Provided that Plaintiff Sanchez has neither alleged that he was discriminated against due to his "race, color, religion, sex or national origin" nor has he brought suit under 42 U.S.C. §12132, he has failed to state a discrimination claim upon which relief may be granted. Accordingly, Plaintiff's Title VII discrimination claims due to physical disability are **DISMISSED**.

3) <u>Retaliation & Title VII</u>

Plaintiff alleges that defendant Police Department of Puerto Rico, through the acts of Lieutenant Fernando Garcia Lugo and Lieutenant Dennis Orego Rodriguez, took retaliatory actions against him for the filing of an administrative complaint denouncing unlawful employment practices. (Docket No.4 at ¶ 21).  The acts allegedly carried forth by Defendant are violative of 42 U.S.C. §2000e-3(1) which states that: "it shall be unlawful employment practice to discriminate against any employee because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this subchapter."

Although Title VII does requires, as a predicate to any civil action, that the moving party

---

[2] Plaintiff's physical disability is the result of a surgical intervention that put three orthopedic screws on his right knee. (Docket No.1 ¶ 12)

initially file an administrative charge with the EEOC, it does not say explicitly that the Court suit must be circumscribed to only that alleged in the agency complaint.  *See generally*, Clockendile v. N.H. Dept of Corr., 243 F.3d 1 (1ˢᵗ Cir. 2005); *see also* Jorge v. Rumsfeld, 404 F.3d 556 (1ˢᵗ Cir. 2005).  Accordingly, the Courts have allowed court claims that go beyond the claim or claims made at the agency level.  Id.  Consequently, the First Circuit Court of Appeals has established the "reasonably related" test in retaliatory claims emergent from a claimant's filing of an administrative charge.  Id.  This, in turn, translates to the preservation of retaliation claims "so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency[.]" Clockendile, 243 F.3d at 6.  Thus, the Court cannot deem plaintiff's retaliation claim as time barred pursuant to the abovementioned criteria.  Neither is it necessary to exhaust administrative EEOC charges in "reasonably related" causes of action to those claims already filed in Court.  *See* Clockendile, 243 F.3d at 6 (retaliation claims that are reasonably related to the filed complaint are preserved and, consequently, do not require EEOC exhaustion).

The Court is well aware that the Eleventh Amendment bars a suit brought in federal courts for monetary damages against states, unless the state being sued waives its immunity or consents to be sued. This protection renders states, including Puerto Rico, immune from claims brought in federal courts by citizens of the same or any other state.[3] Metcalf & Eddy v. Puerto Rico Acueduct

---

[3]   In an unbroken string of cases over the last two decades, the First Circuit consistently has held that Puerto Rico is considered a "State" for Eleventh Amendment purposes, and therefore, Eleventh Amendment applies with full force to the Commonwealth of Puerto Rico. See, e.g., Negron Gaztambide v. Hernandez Torres, 145 F.3d 410 (1st Cir.1998); Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Auth., 991 F.2d 935, 939 n. 3 (1st Cir.1993); Avilés-Martinez v. Monroig, 963 F.2d 2, 8 (1st Cir.1992); De León López v. Corporación Insular de Seguros, 931 F.2d 116, 121 (1st Cir.1991); Culebras Enterprises Corp. v. Rivera Ríos, 813 F.2d 506, 516 (1st Cir.1987); Ainsworth Aristocrat Int'l Pty., Ltd. v. Tourism Co. of P.R., 818 F.2d 1034 (1st Cir.1987); Fernández v. Chardón, 681 F.2d 42, 59 n. 13 (1st Cir.1982) (Puerto Rico enjoys the full benefits of the Eleventh Amendment); Ezratty v. Com. of Puerto Rico, 648 F.2d 770, 776 n. 7 (1st Cir.1981) ("The principles of the Eleventh Amendment, which protect a state from suit without its consent, are fully applicable to the Commonwealth of Puerto Rico."); Litton Indus., Inc. v. Colón, 587 F.2d 70 (1st Cir.1978) (action against Puerto Rico barred by Eleventh Amendment,

& Sewer Authority, 991 F.2d 935, 939 (1st Cir. 1993).   This immunity does not solely protect the State.   Rather, since a State only exists through  its instrumentalities, Eleventh Amendment immunity also extends to arms or "alter egos" of the State, which includes the officers acting on behalf of the state.  *See* Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of Puerto Rico, 818 F.2d 1034, 1036 (1st Cir.1987); *see also*, Mount Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d. 471 (1977).   As with claims against the Commonwealth itself, "the claims in federal court for damages against the Police Department are precluded by the Eleventh Amendment, since they must, if successful, be satisfied from the coffers of the Commonwealth of Puerto Rico." Reyes v. Supervisor of DEA, 834 F.2d 1093, 1097-98 (1st Cir. 1987).   "[I]t is settled law that the Puerto Rico Police Department is an alter ego of the state and cannot be sued in federal court." Cestero v. Rosa, 996 F.Supp. 133, 142-43 (D.P.R. 1998) (citing Rivera v. Medina, 963 F.Supp. 78, 82 (D.P.R. 1997); Reyes v. Supervisor of DEA, 647 F.Supp. 1509, 1513 (D.P.R. 1986) *modified on other gorunds*, 834 F.2d 1093 (1st Cir. 1987)).

Nevertheless, there are some narrow exceptions to the Eleventh Amendment immunity.  One of these exception is when Congress has "unequivocally expresses its intent to abrogate the immunity" and has acted "pursuant to a valid exercise of power." Green v. Mansour, 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d. 371 (1985).  Actions pursuant to 42 U.S.C. §2000e fall within this exception.  First, the Supreme Court has determine that in Title VII cases '"the threshold fact of congressional authorization to sue the State as employer is clearly present." Fitzpatrick v. Bitzer, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d. 614 (1976) (*citation omitted*); *see also* Espinal-Dominguez v. Comwealth of Puerto Rico, 352 F.3d 490 (1st Cir. 2003)  (discussing the applicability of the

---

unless immunity is expressly abrogated by Congress acting under the Fourteenth Amendment).

*Fitzpatrick* ruling to the case of Puerto Rico). Title 42 of the United State Code Section 2000e(b) defines the term employer to mean:

> a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of the twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person, but such term does not include (1) the United States, a corporation wholly owned by the Government of the United States, an Indian tribe, or any department or agency of the District of Columbia subject by statue to procedures of the competitive service (as defined in section 2102 of Title 5), or (2) a bona fide private membership club (other than a labor organization) which is exempt from taxation under section 501 (c) of Title 26, except that during the first year after March 24, 1972, person having fewer than twenty-five employees (and their agents) shall not be considered employers.

42 U.S.C. §2000e(b). A reading of such definition indicates that the States as well as their alter egos, in so far as they are not expressly excluded from the definition mentioned above, are employers for purposes of actions brought against them under Title VII. This, in turn, demonstrates Congress's intention to abrogate the State's Eleventh Amendment in immunity for Title VII litigation.

Second, in *Fitzpatrick* the Court considered the issue of whether Congress "possess[es] the constitutional power under  §5 of the Fourteenth Amendment to authorize [...] Title VII damage actions against the State." Fitzpatrick, 427 U.S. *at* 445, 96 S.Ct. *at* 2666, 49 L.Ed.2d. *at* 614. The Court stated "that the Eleventh Amendment, and the principle of state sovereignty which it embodies, see Has v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 Led. 842 (1980), are necessarily limited by the enforcement provisions of §5 of the Fourteenth Amendment." Fitzpatrick v. Bitzer, 427 U.S. at 451, 96 S.Ct. at 2669, 49 L.Ed.2d. 614. It is clear, thus, the validity of Congress's exercise of power when abrogating the States' Eleventh Amendment Immunity in Title VII litigations under §5 of the Fourteenth Amendment. Consequently, given that the two requirements established in *Green* for the operation of the exception have been met, neither the States nor the

State's alter egos can invoke Eleventh Amendment Immunity as a protection against suit brought against them under Title VII.  *See* <u>Green v. Mansour</u>, 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d. 371.

In the case at bar, pursuant to Plaintiff's allegations a  valid claim under 42 U.S.C. §2000e-3 for the retaliatory actions taken against him by Defendant are properly plead.[4]  The Defendant in this case is the Police Department of Puerto Rico which is an alter ego of the Commonwealth of Puerto Rico and, as such, should be entitled to the immunities afforded to States and are "alter egos" under the Eleventh Amendment.  Albeit, having Congress manifested its intent to abrogate the State's Eleventh Amendment immunity for the purposes of Title VII litigation, as well as having the Supreme Court accepted such abrogation as a valid exercise of Congressional power under §5 of the Fourteenth Amendment, neither the Commonwealth of Puerto Rico nor its alter ego the Puerto Rico Police Department are  immune from the herein Title VII actions brought against it.  Therefore, in the present case, the Police Department of Puerto Rico cannot avail itself of Eleventh Amendment immunity to defeat Plaintiff's Title VII claim of retaliation and, for that reason, Defendant's motion to dismiss in relation to Plaintiff's retaliation claim against co-Defendant Police Department of Puerto Rico is **DENIED**.[5]

Provided that Puerto Rico Law 115 of December 20, 1991, 29 P.R. Laws Ann. § 197a prohibits any employer from:

---

[4]  Retaliatory claims are separate, distinct violations of the law and do not depend on the outcome of the merits of a substantive claim under Title VII.  *See* <u>Mesnik v. General Elec., Co.</u>, 950 F.2d 816, 827 (1st Cir. 1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992); *see also* <u>Soileau v. Guilford of Main</u>, 105 F.3d 12, 16 (1st Cir. 1997); <u>Oliveras Sifre v. Department of Health</u>, 38 F.Supp.2d 91, 102 (1st Cir. 1999).

[5]  It must be noted that the Commonwealth of Puerto Rico is a "state" for the purposes of the Eleventh Amendment.  *See* footnote 3, *infra*.  Hence, it is covered by the abrogation of such immunity as has been held as to all states pursuant to <u>Fitzpatric</u>, 427 U.S. 445, and <u>Espinal Dominguez</u>, 352 F.3d 490.

> discharg[ing], threaten[ing], or discriminat[ing] against an employee regarding the terms, conditions, compensation, location, benefits or privileges of the employemnt should the employee offer or attempt to offer, verbally or in writing, any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico, when such expressions are not of a defamatory character nor constitute disclosure of privileged information established by law[,]

a statute parallel to the federal statute, the Court cannot dismiss this supplemental jurisdiction claim while the retaliation claim under Title VII remains alive within this Court's jurisdiction. Accordingly, Defendant's motion to dismiss in relation to Plaintiff's retaliation claim against co-Defendant Police Department of Puerto Rico is **DENIED**.

However, Defendant's motion to dismiss in regards to the retaliation claim, both federal and state, against co-Defendant Victor Rodriguez Velez is hereby **GRANTED.** Plaintiff, in his complaint and amendment complaint, has limited himself to identifying co-Defendant Victor Rodriguez Velez's friendship and family relationship with Lieutenant Fernando Garcia Lugo and Lieutenant Dennis Orego Rodriguez which, were the agents of the Police Department of Puerto Rico responsible for the retaliatory acts allegedly perpetrated against him. Accordingly, Plaintiff has failed to implicate facts which may grant a remedy against co-defendant Victor Rodriguez Velez. It is evident to this Court that, pursuant to the facts alleged in the complaint, co-Defendant Victor Rodriguez Velez took no part in such retaliatory actions and that an action against him should not be sustained. Therefore, the case against Rodriguez Velez is **DISMISSED WITH PREJUDICE** as insufficient pursuant to Fed.R.Civ.P. 12(b)(6).[6]

---

[6] Furthermore, most courts have held there is no federal cause of action against natural persons under Title VII, and other federal discrimination cases. As this district has previously explained:

> Although the First Circuit has yet to decide whether a Title VII plaintiff may maintain a suit against an individual in his personal capacity, most circuits have held that no personal liability can be attached to agents or supervisors under Title VII. *See* Serapion v. Martinez, 119 F.3d 982 (1st Cir. 1997) (declining to address the issue of individual liability); *but see* Gastineu v. Fleet Mortgage Corp., 137 F.3d 490, 493 (7th Cir. 1998) (citing Williams v. Banning, 72 F.3d 552 (7th Cir. 1995), where no individual liability under Title VII was found); Lissau v. Southern Food Serv., Inc., 159 F.3d 177, 180-

B)  42 U.S.C. §1983

1) Statute of Limitation

Civil rights actions brought forth pursuant to § 1983 of the Civil Rights Act of 1991 do not have a specific statute of limitations.  Consequently, courts have been encouraged to, and must apply, the state's statue of limitations which is most appropriate to the particular §1983 claim.  The most analogous statute of limitations period for a § 1983 claim is the one for personal injury actions, which in Puerto Rico is one year. *See*, Ruiz-Sulsona v. Univ. of Puerto Rico, 334 F3d 157, 160 (1st Cir. 2003); Rodríguez-Nárváez v. Nazario, 895 F. 2d 387, 41-42 (1st Cir. 1990); Rivera Sánchez v. Autoridad de Energía Electrica, 360 F. Supp. 2d 302, 307 (D.P.R. 2005).

The running of the statute of limitations period for a claim of this nature can be tolled by any extrajudicial claim made by the debtor, and by any act of acknowledgment of the debt by the debtor. Art. 1873 of the Puerto Rico Civil Code specifically proscribes that "[the p]rescription of actions is interrupted by their institutions before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor." 31 P.R. Laws Ann. § 5303 (1990).  In order to

---

81 (4th Cir. 1998) (no individual liability under Title VII); Wathen v. General Elec. Co., 115 F.3d 400, 405-06 (6th Cir. 1997) (same); Haynes v. Williams, 88 F.3d 898 (10th Cir. 1996) (same); Dici v. Com. of Pa., 91 F.3d 542 (3rd Cir. 1996) (same); Tomka v. Seiler Corp., 66 F.3d 1295 (2nd Cir. 1995) (same); Gary v. Long, 313 U.S. App. D.C. 403, 59 F.3d 1391 (D.C. Cir. 1995) (same); Lenhardt v. Basic Institute of Technology, Inc., 55 F.3d 377 (8th Cir. 1995) (same); Smith v. Lomax, 45 F.3d 402 (11th Cir. 1995) (same); Grant v. Lone Star Co., 21 F.3d 649 (5th Cir. 1994) (same); Miller v. Maxwell's International, Inc., 991 F.2d 583 (9th Cir. 1993) (same). Like the majority of the circuit courts, this District has generally held that individual defendants are not liable under Title VII. *See* Canabal v. Aramark Corp., 48 F. Supp.2d 94, 95-98 (D. Puerto Rico 1999) (Pieras, J.); Acevedo Vargas v. Colon, 2 F. Supp.2d at 206; Pineda v. Almacenes Pitusa, Inc., 982 F. Supp. 88, 92-93 (D. Puerto Rico 1997); Hernandez v. Wangen, 938 F. Supp. 1052 (D. Puerto Rico 1996); Anonymous v. Legal Services Corporation, 932 F. Supp. 49, 50-51 (D. Puerto Rico 1996).

The Court is compelled by the reasoning of previous decisions within this District.  Title VII's statutory structure suggests that Congress did not intend to impose individual liability over supervisors or agents of employer.

Padilla Cintron v. Rossello Gonzalez, 247 F.Supp.2d 48 (D.P.R. 2003).  *See generally* the well developed and persuasive analysis of District Judge Laffitte in Flamand v. American International Group, Inc., 876 F.Supp. 356, 361-64 (D.P.R. 1994).

set the standard for what constitutes an extrajudicial claim, the Supreme Court of Puerto Rico has relied on the definition provided by the renowned commentator to the Civil Code Diez Picazo.  "In principle, claim stands for demand or notice.  That is: it is an act for which the holder of a substantive right addresses the passive subject of said right, demanding that he adopt the required conduct.  The claim, then, is a pretension in a technical sense."  Rodríguez Narváez v. Nazario, 895 F. 2d 38, 44 (1st Cir. 1990); Diaz de Diana v. A.J.A.S. Ins. Co., 110 P.R.Dec. 471, 476 (1980); Secretario del Trabajo v. Finetex, 116 DP.R. Dec.823, 827 (1986).

In the present case, according to Plaintiff's own allegations, the events that give rise to Plaintiff's due process and equal protection claims under Section 1983 took place between April, 2000 and May, 2002. (Docket 4 at ¶11 to ¶21).  A period of a year, four months, and twenty two days had elapsed from the time the last alleged incident occurred, on May 3, 2002, and the filing of the complaint on September 25, 2003.  Consequently, such claims are time barred.  In addition, Plaintiff took no further actions within the proscribed statute of limitation of one year, after the events in question occurred, which could have interrupted the time period for him to file suit pursuant to § 1983.

Plaintiff should be aware that the Supreme Court of Puerto Rico has ruled that the filing of an administrative complaint will not toll the running statute of limitations for tort actions nor violations of constitutional rights, provided that an administrative agency, such as the Puerto Rico Police Department's Internal Affairs Office or the EEOC, does not possess jurisdiction over  such matters. See Cintrón v. E.L.A., 127 P.R. Dec. 582, 595 (1990); Delgado-Rodríguez v. Nazario, 121 P.R. Dec. 347 (1988); León Nogueras, 964 F. Supp. 585, 588-89 (1st Cir. 1997).  In specific terms, the Supreme Court of Puerto Rico has explained that,

an action before the Department of Labor and the judicial action do not pursue identical goals.  The action before the Department of Labor, the way that it is regulated, does not provide means for revealing the intention or desire of the creditor of conserving and demanding the right to be compensated for the damages suffered.  Because of that, the exercise [of an administrative complaint] does not qualify as a pretension capable of tolling the running of the statute of limitations for the civil action.

Cintrón, 127 P.R. Dec at 595. Therefore, for all practical purposes, a plaintiff that files an administrative complaint for several causes of action, tolls the statute of limitations for all the causes should the agency be able to provide him all the remedies sought against the defendants, and should he have properly alleged at the agency level a §1983 civil rights claim based on federal constitutional causes of action, with injunctive remedy and request damages. But, simply stated, the EEOC cannot grant the remedy now sought and, even if it could, the interruption status ends with the date of the filing, and the statute of limitations begins to run again for a year and fails to last for the duration of the administrative action.  Cintrón, 127 P.R. Dec. at 595.  Plaintiff should keep in mind that "**the pendency of an administrative proceeding does not maintain the section 1983 claim in a state of suspended animation.**"[7]  Leon Nogueras, 964 F. Supp.at 589; *see also* González- García v. Puerto Rico Elec. Power, 214 F. Supp. 2d 201 (D.P.R. 2002); Secretario del Trabajo, 116 P.R. Dec. at 823; Galib Frangie v. El Vocero, 138 P.R. Dec MJ 66, 1995 WL 905884 at *3 (1995).

The instant cause of action under 42 U.S.C. §1983 is barred, therefore, by the applicable one year limitations period.  For purposes of this case "*even if* the filing of the [administrative

---

[7] *A contrario sensu* a "suspended animation" occurs under an EEOC charge with one important distinction-the statute calls for "suspended animation" against the employer, in this case, the Police Department, **but not** the natural persons sued herein in the individual capacities, for a definite period of time after the issuance of the right to sue letter. *See generally*, Love v.Pullman, 404 U.S. 522, 526; 92 S. Ct. 616 (1972); Civil Rights Act of 1964, §706 (c), 42 U.S.C.A. §2000e-5.

complaint]...had constituted an extrajudicial claim that tolled the statute of limitations for the section 1983 claim, the most that this could have done would be to have restarted the running of the one-year statute of limitations." León Nogueras, 964 F. Supp at 589 (*emphasis ours*) (quote based on local law under the local case of Cintron, 127 P.R. Dec. at 595).  Plaintiff filed an administrative complaint with the Puerto Rico Department of Labor on September 19, 2000, which, at most, only interrupted the statute of limitations until the year September 2001.  Plaintiff presents no further evidence or allegation in the complaint that would indicate that he issued subsequent extrajudicial claims interrupting the statute of limitations until September 25, 2003, date in which plaintiff filed the instant claim.  Instead, what the complaint does in fact show is that plaintiff decided to wait, **nearly three years**, until he was notified with a right to sue letter.  Accordingly, plaintiff's allegations under 42 U.S.C. § 1983 are time barred given that the filing of an administrative complaint with the Department of Labor, EEOC Local Office, fails to toll **in any way** the running of the statute of limitations for claims pursuant as to a civil rights complaint under §1983 against the natural persons individual co-defendants.  *See* León Nogueras, 964 F. Supp at 589; Cintrón, 127 P.R. Dec. at 595; Galib Frangie v. El Vocero, Id.

        With respect to all other plaintiff's allegations relating to the violations of his Fourth Amendment constitutional rights against individual co-defendants, the same principle applies.  These claims are also time-barred.  Plaintiff's allegations do not survive defendant's motion to dismiss by reason that his constitutional claims are *within claims under* 42 U.S.C. §1983.

        Pursuant to the above, defendants motion to dismiss is hereby **GRANTED** as to the Fourth Amendment claims.  Given the Court's ruling in this case, the Court need not to examine any further the rest of the allegations presented by the defendants in the *Motion to Dismiss* (Docket No. 10).

2) <u>Property Right</u>

Section 1983 of Title 42 of the United State Code imposes civil liability upon "every person who, under color of any statute, ordinance regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. §1983.  As the text of Section 1983 clearly shows, and the United State Supreme Court reiterates, Section 1983 "'is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred."' <u>Graham v. Connor</u>, 490 U.S. 386, 393, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (citing <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694, n. 3, 61 Ed.2d 433 (1979)).  Therefore, "the first inquiry in any §1983 suit, […] is whether the Plaintiff has been deprived of a right secured by the Constitution and laws." <u>Baker v. McCollan</u>, 443 U.S. at 140, 99 S.Ct. 2692,61 L.Ed.2d 433 (1979).

In the case at bar, Sanchez, by asserting a claim under Section 1983, invokes the protection of the Fifth and Fourteenth Amendments of the United States Constitution.[8]  On September 3, 1992,

---

[8]  It must be noted that the Supreme Court held in <u>Ex. Bd. of Eng., Arch., and Sur. v. Flores de Otero</u>, 426 U.S. 572, 96 S.Ct. 2264, 49 L.Ed.2d 65 (1976), that "it is clear now, however, that the protections accorded by either the Due Process Clause of the Fifth Amendment or the Due Process and Equal Protection Clauses of the Fourteenth Amendment apply to residents of Puerto Rico."  The Court recognized the applicability of these guarantees as long ago as its decisions in <u>Downes v. Bidwell</u>, 182 U.S. 244, 283-284, 21 S.Ct. 770, 785, 45 L.Ed. 1088 (1901), and <u>Balzac v. Porto Rico</u>, 258 U.S. 298, 312-313, 42 S.Ct. 343, 348, 66 L.Ed. 627 (1922)."  Both the Supreme Court and the First Circuit "thus far ha[ve] declined to say whether it is the Fifth Amendment or the Fourteenth which provides the protection." <u>Examining Board of Engineers, Architects, and Surveyors, etc., et al., v. Maria C. Flores de Otero and Sergio Perez Nogueiro</u>, *supra*.  The Fourteenth, as well as the Fifth Amendment, provide a due process clause. Both clauses have exactly the same language, the only significant difference is that the Fourteenth Amendment due process clause is directed to the states, while the Fifth Amendment is not.  In addition, the Fourteenth Amendment includes the equal protection clause which the Fifth Amendment does not include.  However, in <u>Bolling v. Sharpe</u>, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954), a case challenging "the validity of segregation in the public schools of the District of Columbia,"  addressed this issue and decided that "the concepts of equal protection and due process, both stemming from our American ideal of fairness, are not mutually exclusive. The 'equal protection of the laws' is a more explicit safeguard of prohibited unfairness than 'due process of law,' and, therefore, we do not imply that the two are always interchangeable phrases. But, as this Court has recognized, discrimination may be so unjustifiable as to be violative of due process."  Consequently, the issue of whether plaintiff's claims should be asserted under the Fifth or the Fourteenth Amendment is ultimately inconsequential.

Sanchez started working, as an undercover agent, for the Puerto Rico Police Department[9]. (Docket 4 at ¶11).  He was then transferred, at his own request, to the Guanica Maritime Office, on March 1999. (Docket 4 at ¶11).  His direct superior in Guanica was Co-Defendant Lieutenant Victor Rodriguez Velez. (Docket 4 at ¶10).  Plaintiff alleges that, once in Guanica, Co-Defendant Rodriguez Velez did everything in his power to prevent Sanchez from occupying the position to which he was transferred[10]. (Docket No. 4 at ¶12 to ¶20).  Defendants' actions included transferring Plaintiff out of the Guanica Maritime Office and reassigning him to the San Juan Field Operation Unit. (Docket No. 4 at ¶19).  It is only through these allegation that Plaintiff claims what this Court can only assume is that Defendant has deprived him of his property right without the due process of law.  However, given that Plaintiff's claims are time barred, this Court does not have to decide whether Defendant's actions violated Sanchez's constitutional rights.  Accordingly, for the reasons stated above, Plaintiff's due process and equal protection claims under Section 1983 are **DISMISSED**.

3) Malicious Prosecution

Plaintiff purports to request relief against defendants for violations to his right to be free form malicious prosecution and unreasonable searches and seizures – violations which, he contends, are actionable under 42 U.S.C. § 1983.  In essence, he argues that the defendants seeking the commencement of criminal proceedings against him, which were eventually dismissed by State Court, is tantamount to malicious prosecution.  According to Plaintiff's allegations, the filing of false criminal charges against him took place in late 2003, well within the § 1983 statute of limitations.

---

[9]  From Plaintiff allegations it is uncertain the geographical area in which he worked as undercover agent for the Police Department of Puerto Rico.

[10]  There is nothing in the record that reflects to which position plaintiff was transferred to at the Guanica Maritime Office.

(Docket No. 4 at ¶21D).  Nevertheless, even when this is the only § 1983 claim that is not time barred,[11] Plaintiff's malicious prosecution claim must be dismissed.

Pursuant to 28 U.S.C. § 1331, the federal courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Moreover, section 1983's purpose "[i]s to provide a remedy in federal court in protection of federal rights."  <u>Ramos Bonilla v. Vivoni del Valle</u>, 336 F.Supp.2d 159,166 (1st Cir. 2004) (<i>quoting</i> <u>Birnbaum v. Trusell</u>, 371 F. 2d 672 (2nd Cir. 1966)).  Section 1983 was particularly created to "[d]eter[ ] state actors from using [the] badge of their authority to deprive individuals of their federally guaranteed rights and provide relief to victims whenever such deterrence fails." <u>Id.</u>; <i>see also</i> <u>Wyatt v. Cole</u>, 504 U.S. 158, 112 S.Ct. 1827 (1992); <u>City of Newport v. Fact Concerts Inc.</u>, 453 U.S. 247, 101 S.Ct. 2748 (1981); <u>Rueben Corp. v. Brauer</u>, 655 N.E. 2d 1162 (1995).

Section 1983 authorizes actions for equitable relief and/or damages against "every person who under color of any [. . .] custom or usage, of any State or Territory [. . .] subjects or causes to be subjected any citizen of the United States or other person [. . .] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  Thus, as explained above in detail, in order to state a claim cognizable under Section 1983, Plaintiff must allege "that some person has deprived him of a [constitutional or a] federal [statutory] right." <u>Gomez v. Toledo</u>, 446 U.S. 635, 640 (1980).  To prevail in an action brought under 42 U.S.C. § 1983, plaintiff must satisfy two prongs.  First, he must prove that he was deprived of a right, immunity, or privilege secured by the Constitution or laws of the United States. <u>Parratt v. Taylor</u>, 451 U.S. 527,

---

[11]   The EEOC claim is designed to exhaust administrative actions against the employer, in this case the Police Department, not for §1983 claims against individual persons acting as supervisors or agents of the employer. <i>See</i> <u>Leon Nogueras</u>, 964 F.Supp. at 589.

535 (1981); <u>Baker v. McCollan</u>, 443 U.S. 137, 140 (1979); <u>Voutour v. Vitale</u>, 761 F.2d 812, 819 (1st

Cir.1985). Second, he must have been deprived of his right, immunity or privilege, by a person

acting under color of state law.  <u>Id.</u>  Accordingly, two distinct elements are to be addressed. First,

there must have been a violation of rights secured by the Constitution or laws of the United States

and, defendants' conduct must have caused the deprivation of plaintiff's rights.  <u>Id.</u>; *see also* <u>Soto</u>

<u>v Carrasquillo</u>, 878 F.Supp. 324, 326-327 (D.P.R. 1995).

      The malicious prosecution cause of action permits damages for a deprivation of liberty

pursuant to a legal process.[12]  However, "the law is settled that a garden variety claim of malicious

prosecution garbed in the regalia of § 1983 must fail.  There is no substantive due process right

under the Fourteenth Amendment to be free from malicious prosecution and the availability of a

plainly adequate remedy under the  [state] law defeats the possibility of a procedural due process

claim" in the instant case.[13]  <u>Ramos Bonilla</u>, 336 F.Supp.2d at 166; *see also* <u>Meehan v. Town of</u>

<u>Plymouth</u>, 167 F.3d 85, 88 (1st Cir. 1999) (*citing*  <u>Roche v. John Handcock,</u>  81 F. 3d 249 (1st Cir.

1996) (*internal citations omitted*)).  Consequently, in order to transform a malicious prosecution

claim into a claim cognizable pursuant to §1983 in a state that has a remedy for malicious

prosecution, the plaintiff must demonstrate a deprivation of a separate and independent

---

[12]  In a malicious prosecution claim the plaintiff must establish that (1) the criminal action was initiated and instigated by co-defendants;(2) the same culminated in favor of the plaintiff;(3) defendants acted with malice and absent probable cause; (4) and plaintiff suffered damages. <u>Rodriguez Esteras v. Solivan Diaz</u> 266 F. Supp.2d 270, 279 (D.P.R. 2003).

[13]  Moreover, the Supreme Court has consistently held: "[w]e begin analysis of petitioner's claim by repeating our observation in <u>Collins v. Harker Heights</u>, 503 U.S. 115, 125, 117 L.Ed.2d 261, 112 S.Ct. 1061 (1992). 'As a general matter, the Court has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.'  The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity.  *See e.g.* <u>Planned Parenthood of Southeastern Pa. v. Casey</u>, 505 U.S. 833, 847-49, 120 L.Ed.2d 674, 112 S.Ct. 2791 (1992) (describing cases in which substantive due process rights have been recognized).  Petitioner's claim to be free from prosecution except on the basis of probable cause is markedly different from those recognized in this group of cases."  <u>Albright</u>, 510 U.S. at 271-72.

constitutional right.  *See* <u>Nieves v. McSweeney</u>, 241 F.3d 46, 53 (1ˢᵗ Cir. 2001).  Particularly, in the specific case of malicious prosecution, the First Circuit Court of Appeals has established that, in order to determine whether a federal protected right has been violated, the plaintiff has to establish that the criminal charges at issue must have imposed some depravation of liberty consistent with the concept of seizure.  <u>Britton v. Maloney</u>, 196 F.3d 24, 28-29 (1ˢᵗ Cir. 1999) (*citations omitted*).

Section 1983 "is not in itself a source of substantive rights" but "a method for vindicating federal rights elsewhere conferred."  <u>Albright v. Oliver</u>, 510 U.S. 266 at 271 (1994).  Hence, the plaintiff has to identify the constitutional right allegedly infringed. <u>Id.</u> (*citations omitted*).  **The Fourteenth Amendment, in its procedural due process aspect, as is clearly plaintiff's claim, cannot serve as the vehicle for plaintiff's assertion of the infringement of his constitutional rights, pursuant to the alleged malicious prosecution he was subjected to, since the plaintiff has an adequate remedy for malicious prosecution pursuant to state law.  *See* 31 P.R. Laws Ann. §5141; *see also* <u>Nieves v. McSweeney</u>, 241 F.3d at 53 ("[n]o procedural due process claim can flourish in this soil because [Puerto Rico] provides an adequate remedy for malicious prosecution.").  Furthermore, the malicious prosecution claim also fails the substantive due process aspect of the Fourteenth Amendment since the "'substantive due process may not furnish a constitutional peg on which to hang' a federal malicious prosecution tort."  <u>Id.</u>** (*quoting* <u>Albright v. Oliver</u>, 510 U.S. at 271 n. 4.)  However, "[w]here a particular Amendment 'provides and explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process must be the guide for analyzing these claims."  <u>Albright v. Oliver</u>, 510 U.S. at 273 (*quoting* <u>Graham v. O'Connor</u> 490 U.S 386 at 395 (1989)).  Therefore, the Fourth Amendment could potentially

constitute an adequate 'constitutional peg' where a plaintiff subjected to a malicious prosecution may 'hang' his §1983 claim.  *See* Ramos Bonilla 336 F.Supp.2d at 166-67; Nieves v. McSweeney, 241 F.3d at 54; Meehan v. Town of Plymouth, 167 F.3d at 88 (*citing* Albright v. Oliver 510 U.S. at 371).

The First Circuit has established that "[f]or a public official to transgress the Fourth Amendment through the initiation and pursuit of criminal charges, **the prosecution of said charges must, at a bare minimum, have occasioned a *deprivation of liberty* consistent with the concept of a seizure.**" Id. at 54 (*citing* Britton v. Maloney, 196 F.3d 24, at 28 (*citing* Singer v. Fulton County Sheriff, 63 F.3d 110, 116 (2nd Cir. 1995)) (*emphasis added*).  In other words, **a seizure actionable under the Fourth Amendment only occurs when a state official, under color of authority, restrains the liberty of a citizen**. *See* Nieves v. McSweeney, 241 F.3d at 55.  For example, a legal obligation to appear in court does not impose any restrictions on a person's liberty and is insufficient to establish a seizure within the meaning of the Fourth Amendment.  Nieves v. McSweeney, 241 F.3d at 56; Britton v. Maloney, 196 F.3d at 29-30.

In the instant case, the first requirement is not met due to Plaintiff Sanchez not having alleged that he was deprived of his liberty as a consequence of Defendant's actions.  In fact, Plaintiff admitted in the complaint that the charges filed by Defendant were dismissed.  Plaintiff also fails to allege that Defendant interfered in any way with the judicial process.  The most that can be inferred from Plaintiff's allegations in the complaint is that Defendant used the judicial system to further his discriminatory purposes against him.  However, in the "misuse of the legal process alone will not be enough to sustain a claim." Torres v. Superintendent of Police of Puerto Rico, 893 F.2d 404, 410 (1st Cir. 1990).  Consequently, Plaintiff's contentions are not sufficient to entertain a claim

for malicious prosecution under Section 1983.    Furthermore, the laws of the commonwealth of Puerto Rico offer Plaintiff and adequate remedy for his malicious prosecution claim in 31 P.R. Laws Ann. §5141,[14] and for that reason this case fails to satisfy the second requirement established by *Torres*.  For the reasons stated above Plaintiff's malicious prosecution claim is **DISMISSED**.  In sum, the Court finds that plaintiff has failed to allege facts to sustain a Fourth Amendment violation, pursuant to his malicious prosecution claim, as such, plaintiff failed the very first prong of any claim pursuant to § 1983 which is to establish an infringement of a federal right, and dismissal on this matter must be **GRANTED** in favor of defendants.

### III.  Remaining State Law Claims

The only remaining state law claims are those under Articles 1802, and 1803 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. §§ 5141, and 5142.  However, both causes of action proscribed by these articles for personal injuries, as discussed above, center around a one year statute of limitations.  Any claims under Law 100, 29 P.R. Laws Ann. § 146, is also time barred since said claim is within the nature of damages being the statute of limitations one of one year.  *See* Olmo v. Young & Rubicam, 110 P.R. Dec. 740 (1981).   Accordingly, and as amply explained above, a period of a year, four months, and two days had elapsed form the time the last alleged incident occurred before the filing of the complaint, and the fact that the prescriptive period was never interrupted (*see discussion above*), the remaining supplemental claims are time barred.

### IV. Conclusion

Based on the aforementioned reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to Dismiss (Docket No. 15).  Plaintiff's discrimination, and physical

---

[14] *See e.g.* Parrilla Baez v. Airport Catering Servs., 133 P.R. Dec. 263 (1993).

disability claims pursuant to Title VII are **DISMISSED WITH PREJUDICE**; plaintiff's retaliation claims against co-defendant Victor Rodriguez Velez is **DISMISSED WITH PREJUDICE**; finally, all of plaintiff's claims pursuant to Section 1983 (property right and malicious prosecution) are **DISMISSED WITH PREJUDICE** due to plaintiff's failure to interrupt the running of the statute of limitations pursuant to claims under §1983.[15]  Plaintiff's supplemental local claims, except that brought pursuant to Law 115, are all time barred, and, thus **DISMISSED WITH PREJUDICE.** However, co-defendant the Puerto Rico Police Department's Motion to Dismiss as to Plaintiff's retaliation claims under 42 U.S.C. §2000e-3 is **DENIED**.

Co-defendant the Police Department of Puerto Rico is granted **TWENTY DAYS** from the issuance of this order to answer the complaint.  **NO EXTENSIONS ARE TO BE GRANTED.**

**IT IS SO ORDERED.**

Date: **September 20, 2005.**                          s/ Daniel R. Dominguez
                                                       **DANIEL R. DOMINGUEZ**
                                                       **U.S. DISTRICT JUDGE**

---

[15] Even if interrupted, the period begins immediately the next day, and the plaintiff has an extra year to file the claim, which has more than elapsed (time of filing in the Labor Department was 9/19/2000 and the claim was filed in Court over three years later on 9/23/2003).  Leon Nogueras, 964 F. Supp. at 589.